Thomas P. ATHRIDGE, et al., Plaintiffs,

v.

**AETNA CASUALTY AND SURETY COMPANY, Defendant.**

No. CIV.A.96–2708 (HHG/JMF).

United States District Court, District of Columbia.

Nov. 30, 1998.

William Joseph Rodgers, Charles Belsome Long, Collier, Shannon, Rill & Scott, Washington, DC, for Plaintiffs.

Lee H. Ogburn, Geoffrey H. Genth, Kramon & Graham, P.A., Baltimore, MD, for Aetna Casualty and Surety Co.

Richard Edward Starr, Arlington, VA, for Irving Starr and Alicia Iglesias.

Peter Edward Derry, Pyne & Derry, P.C., Chevy Chase, MD, for Amica Mutual Ins. Co.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

### Introduction

This matter is now before me pursuant to my Order that Aetna [1] show cause why it should not pay the expenses, including attorney's fees, which plaintiffs incurred in filing *Plaintiffs' Motion to Compel Defendant Aetna to Produce and Permit Inspection and Copying of Documents Specified in Plaintiffs' First Request for Production of Documents and for Assessment of Expenses Incurred and Attorney Fees* which I will hereafter refer to as the "Motion to Compel."

To put it mildly, this case has generated substantial controversies concerning discovery which I have resolved in previous opinions.[2] Aetna has always insisted that an exclusion in an insurance policy relieves it of

---

**1.** Counsel for this insurance company indicates that Travelers Casualty and Surety Company is the corporate successor to Aetna which is no longer in existence. Plaintiffs should file an amended complaint as soon as possible. For present purposes and for the sake of consistency with my earlier opinion, I will refer to this defendant insurance company as "Aetna."

**2.** *See Athridge v. Aetna Casualty and Surety Co.,* Civ. A. No. 96–2708, 1997 WL 732430 (D.D.C. Sept. 23, 1997); *Athridge v. Aetna Casualty and Surety Co.,* Civ. A. No. 96–2708, 1998 WL 429661 (D.D.C. July 29, 1998). A third opinion will soon appear in Westlaw.

any obligation to defend or indemnify Jorge Iglesias ("Jorge"). Jorge was driving a car which struck and severely injured plaintiff Thomas Athridge ("Tommy"). That accident lead to several lawsuits being filed and in one of them Judge Harold Greene ordered Jorge to pay Tommy substantial damages. When Judge Greene was advised that Jorge was contemplating bankruptcy, he ordered that Jorge assign whatever rights he might have against Aetna to Tommy. Ultimately, that preliminary order ripened into a final order and judgment which has since been summarily affirmed. 1997 WL 404854 (D.C.Cir. June 30, 1997).

This lawsuit is, at least in part,[3] based on that assignment. Tommy insists that Aetna violated duties it owed Jorge in the manner in which it secured a Superior Court determination that the exclusion from coverage mentioned above relieved Aetna of any responsibility to Jorge. As Jorge's assignee, he claims derivatively whatever rights Jorge could claim against Aetna.

When this matter last came before Judge Greene, he indicated that he would permit discovery before ruling on Aetna's motion for summary judgment. That motion is premised on Aetna's assertion that no reasonable finder of fact could reach any conclusion other than that Jorge's driving the car was excluded from coverage. If Aetna is right, it follows, according to Aetna, that, since Jorge had no rights against it, Tommy does not either.

### The Discovery Sought and Aetna's Privilege Claims

Jorge sought Aetna's files pertaining to its handling of his claim. Aetna surrendered all documents in its file that were received or generated prior to June 5, 1991, the day on which the D.C. Court of Appeals affirmed the determination, mentioned above, that the exclusion in the policy relieved Aetna of any obligation to defend or indemnify Jorge. Aetna claimed the attorney-client and work-product privileges, however, as to certain documents received after that date. Aetna

explained the reason for its differing treatment of the two sets of document as follows:

> Plaintiffs' counsel is seeking production of documents that Aetna and counsel for Aetna and its alleged insureds generated during periods in which (1) litigation concerning the 1987 accident was actually pending, and (2) as a result of the June 5, 1991 dismissal of Iglesias' appeal in the declaratory-judgment action, Plaintiffs' assignor (Iglesias) had no arguable right, under the policy or otherwise, to discover the contents of Aetna's files. Confidential documents that an attorney or his client prepares in connection with pending litigation are privileged.

*Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel Production of Documents and for Assessment of Costs and Attorneys' Fees Against Defendant* at 10.

In Aetna's view, it was thus utterly improper for Tommy to seek documents generated during the pendency and in connection with the very litigation that grew out of the accident once it was conclusively determined by a court that Aetna bore no responsibility to defend or indemnify Jorge.

At this point, the parties were quarreling over the sufficiency of the privilege log that Aetna had provided Tommy's counsel for the documents that Aetna was withholding. Tommy's counsel characterized the privilege log as useless because it was so unspecific. Aetna rejoined that, since it was clear that the attorney-client and work-product privileges shielded documents created in pending lawsuits, the privilege log was as specific as it had to be.

### Tommy's Position

Tommy advanced specific legal theories as to why the privileges Aetna claimed were inapplicable. Tommy argued that when an insurance company appoints counsel for an insured, it cannot thereafter assert the attorney-client privilege against the insured as to any communication with the attorney regarding the matter. He cited three federal cases in support of this proposition. *See Memo-*

---

**3.** Tommy makes other claims against Aetna based on abuse of process and the intentional infliction of emotional distress.

*randum of Points and Authorities in Support of Motion to Compel* at 9. It therefore followed that, since the privilege was unavailable to Aetna to protect it from disclosure of the documents to Jorge, it was equally unavailable to protect Aetna from Tommy's demand. Tommy also argued that the work-product privilege was equally unavailable to shield documents from the client, who, after all, held the privilege. Jorge, as holder of the privilege, could not be prevented from seeing the work-product created for his benefit and Tommy, as his assignee, could not either.

### Judicial Determinations

I eliminated the question of the sufficiency of the privilege log by ordering the production of the documents that Aetna claimed were privileged. After I examined them, I granted the motion to compel.

I first found that, as Tommy suggested, Aetna could not claim the privilege against Jorge. It was clear, under the law of this Circuit, that when a lawyer represented two persons and they later had a falling out and one sued the other, neither could claim the attorney-client privilege to prevent the lawyer from disclosing to one what the other told the lawyer. That principle had also been applied when an insurance company hired an attorney to represent its insured. When the insured then sued the insurance company, the courts had rebuffed any attempts by the insurance company to claim the attorney-client privilege to prevent its insured access to the documents that attorney had created when she represented the insured and the insurance company's common interest in defeating the case brought against the insured. Finally, I found that the courts had applied this principle when the insured assigned whatever claim she had against the insurance company to the person who sued the insured in the first place. That, of course, was the situation here.

Although Aetna insisted that it had taken a position antithetical to Jorge's by securing from the Superior Court a determination that it had no obligation to defend or indemnify Jorge, I concluded that Aetna had "hedged its bets" by compensating a lawyer (Paul Pearson) who had been invited by Jorge's lawyer, Irving Starr, to help him defend Jorge in the action before Judge Greene. While I thought it understandable that Aetna would secure a determination that it had no responsibility to Jorge and nevertheless pay a lawyer to defend him, I concluded that Pearson's simultaneous representation of Aetna's and Jorge's interests barred Aetna from claiming attorney-client or work-product privileges to prevent Jorge's access to documents that were generated for, or pertained to, Pearson's work on Jorge and Aetna's behalf. Ultimately, Aetna could not prevent Tommy from that access either since Tommy, as Jorge's assignee, succeeded to whatever rights Jorge could claim against Aetna.

Although I could have stopped there, I decided, since I had seen the documents, that I would speak to the applicability of the attorney-client and work-product privileges to those documents, irrespective of who could then claim the privileges.

As to the attorney-client privilege, I concluded that, in this Circuit, the attorney-client privilege is narrowly circumscribed to shield from disclosure only those communications from a client to an attorney made in confidence and for the purpose of securing legal advice. I could not find, in the claims files which Aetna claimed were privileged, any communication from an Aetna employee (or Jorge, for that matter) communicated to either Paul Pearson or an attorney for Aetna made in confidence and for the purpose of securing Pearson's or that lawyer's advice. Instead, the claims file contained reports by Aetna employees about developments in the various lawsuits, authorizations to pay lawyers' bills, and the discussion of the proper reserve to maintain.

A second file, consisting of correspondence from Pearson to Aetna, contained his status reports on the litigation and his bills. Again, there was nothing in these documents that would disclose anything communicated to Pearson by any member of the Iglesias family or anyone else for the purpose of seeking legal advice.

As to the work-product privilege, I focused on the authority in this Circuit, insisting that

documents qualify for that privilege only if prepared for trial or in anticipation of litigation which I viewed as having a motivational and temporal dimension. As to the motivational dimension, to qualify the documents had to be prepared in order to assist an attorney in preparing for a trial or for use at that trial. If the documents were prepared for some other reason, the work-product privilege did not apply merely because a lawyer prepared them at some point during the pendency of litigation. Under this standard, I could not find that the documents in the two files were prepared for trial. None of them were of any use during the trial before Judge Greene or in any of the other cases then pending. None were prepared to memorialize a witness's statement and none would have possibly disclosed a lawyers' strategy as to any trial. To the contrary, they were created for other purposes, *i.e.*, to secure payment for services rendered, to report on developments in litigation and to plan a reserve for contingencies. I therefore concluded that none were covered by the work-product privilege.

### The Controlling Legal Standard

■ Since I rejected all of Aetna's privilege claims and ordered it to produce the documents it claimed to be privileged, I directed Aetna to convince me why I should not order it to pay Tommy the reasonable expenses he incurred, including attorney fees, in moving to compel. Fed.R.Civ.P. 37(a)(4)(A). To do so, Aetna must demonstrate that its refusal to produce the documents and its resistance to the motion to compel were substantially justified.[4]

■ By substituting "substantial justification" for good faith, Fed.R.Civ.P. 37(a)(4)(A) objectifies the controlling standard by forcing judicial consideration of the state of law when the motion to compel is made and opposed. If there is an absence of controlling authority, and the issue presented is one not free from doubt and could engender a responsible difference of opinion among conscientious, diligent but reasonable advocates, then the opposing positions taken by them

are substantially justified. *Maddow v. Procter & Gamble Co., Inc.,* 107 F.3d 846, 853 (11th Cir.1997) (counsel substantially justified in relying on Supreme Court dictum and out of circuit case law when no controlling authority in the circuit); *New York State National Organization for Women v. Terry,* 886 F.2d 1339, 1357 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); *Pearce v. Club Med Sales, Inc.* 172 F.R.D. 407, 411 (N.D.Cal. 1997) (position not substantially justified when vast bulk of legal authority was against it); *New Mexico Tech Research Foundation v. Ciba–Geigy Corp.,* 37 Fed.R.Serv.3d 971, 1997 WL 576389 (D.R.I.1997); *General Motors Corp. v. Johnson Matthey, Inc.,* 887 F.Supp. 1240, 1245 (E.D.Wis.1995) (position not substantially justified when based on misrepresentation of case); *Frazier v. Southeastern Pennsylvania Transportation Authority,* 161 F.R.D. 309, 313 (E.D.Pa.1995) (position justified when, although unconvincing, "not completely without basis in the law"); *Bowne v. AmBase Corp.,* 161 F.R.D. 258, 262 (S.D.N.Y.1995) (expenses awarded when party supported "its claims of privilege with sweeping generalizations about categories of documents in lieu of providing evidence about the characteristics of each document"); *Harp v. Citty,* 161 F.R.D. 398, 403 (E.D.Ark.1995) (expenses awarded when counsel had time to research law and change position and did not do so); *Warzon v. Drew,* 155 F.R.D. 183, 187–88 (E.D.Wis.1994) (substantial justification found when no clear and controlling precedent to the contrary); *Eureka Financial Corp. v. Hartford Accident and Indemnity Co.,* 136 F.R.D. 179 (E.D.Cal.1991)(blanket claim of privilege unjustified and no authority provided for position taken); *T.N. Taube Corp. v. Marine Midland Mortgage Servicing Corp.,* 136 F.R.D. 449, 456 (W.D.N.C.1991) (unclear question; position justified); *Sneirson v. Chemical Bank,* 108 F.R.D. 159, 163 (D.Del. 1985) (given recognition of right to privacy in other contexts, assertion as to financial records substantially justified); *Cullins v. Heck-*

---

**4.** Aetna does not claim nor could I find that there are other circumstances that render the award of

such expenses unjust. Fed.R.Civ.P. 37(a)(4)(A).

*ler*, 108 F.R.D. 172, 177 (S.D.N.Y.1985); *In re Dayco Corp. Derivative Securities Litigation*, 99 F.R.D. 616, 626 (S.D.Ohio 1983) (difficulties of legal and factual issues and excellent memoranda submitted rendered parties' positions substantially justified); *Smith v. Montgomery County*, 573 F.Supp. 604, 614 (D.Md.1983) (substantial privacy grounds for resistance to discovery); *LFE Corp. v. Drytek, Inc.* 36 Fed. R. Serv. 985 (D.Mass.1983); *Wood v. Breier*, 66 F.R.D. 8, 15 (E.D.Wis. 1975) (substantial justification in position taken; executive privilege claim involves *ad hoc* balancing of public policies); *White v. Beloginis*, 53 F.R.D. 480 (S.D.N.Y.1971) (general objections unjustified); *Self v. American Home Assurance Co.*, 51 F.R.D. 222, 224 (N.D.Miss.1970) (question not without difficulty). *See also Usery v. Brandel*, 87 F.R.D. 670 (W.D.Mich.1980) (good faith exercise of constitutional right) *Cf. Solomon v. Scientific American Inc.*, 125 F.R.D. 34, 39 (S.D.N.Y. 1988) (when party failed to bring Court's attention to controlling precedent he will bear his own costs).

### Aetna's Position Was Not Substantially Justified

■ Using this standard, I cannot find that Aetna's position was substantially justified. The most startling aspect of Aetna's position is its silence as to the central issue presented. On February 2, 1998, Tommy's counsel advised Aetna's counsel of his position that Aetna could claim neither an attorney-client nor work-product privilege as to documents pertaining to Pearson's representation of Jorge against Jorge because Jorge, as insured, was Pearson's client and Tommy succeeded to Jorge's rights by the assignment. Exhibit 4 to Motion to Compel at 4–5. Aetna insisted, in reply, that the documents pertaining to Pearson's representation of Jorge were received or created after the date of the final determination by a court that Jorge was not an Aetna insured for whom it had any responsibility. Exhibit 5 to Motion to Compel at 5.

When Tommy moved to compel, he invoked the principle that Pearson's joint representation of Aetna and Jorge's interest in the case before Judge Greene prevented Aet-

na from claiming the attorney-client and work-product privileges against Jorge and his assignee. But Aetna ignored the argument and the cases cited in support of it and did not explain why Tommy's theory was wrong, why the cases he cited did not support it, and whether there was countervailing authority. Instead, Aetna persisted in its view that the judicial determination that it had no responsibility to Jorge legitimized its privilege claims even though Aetna had paid Pearson for his representation of Jorge. Thus, it never grappled at all with the significance of its paying Pearson in determining whether Aetna could continue to assert privileges to bar Jorge from seeing what Pearson produced when Pearson was simultaneously representing Aetna's and Jorge's mutual or joint interest in defeating Tommy's claim.

It did so at its peril, for Aetna's payment of Pearson was at the very heart of my decision. I found in that payment the basis for my conclusion that Pearson was representing Aetna's and Jorge's mutual interest. Therefore, Aetna could not claim any privilege to prevent Jorge or his assignee from seeing what Pearson had done. As a result, Aetna, in opposing a motion to compel, remained silent as to a central issue before the Court. Indeed, even now, Aetna, in opposing the award of expenses, still does not speak to why its position was substantially justified in the teeth of the authority Tommy cited and the authority I relied on for the proposition that Aetna could not claim the privileges it did against Jorge or Tommy.

■ Aetna's silence is deafening. A party litigant who remains silent as to a central issue before the Court cannot describe its position of ignoring its opponent's most important argument as substantially justified. The purpose of Fed.R.Civ.P. 37(a)(4)(A)—to force attorneys to carefully consider their positions before coming before the Court with a discovery dispute and to assert only those positions which are supported—is just as easily nullified by a refusal to acknowledge one opponent's arguments and grapple with them as it is by taking a position that is contrary to existing authority. In either instance, a more conscientious examination of one's position would prevent the waste of

judicial resources that is unnecessarily incurred when one party insists the court resolve the issue it ignored. Simply put, running from the fight by ignoring what one's opponent has said is not a substantially justified position for a litigant to take.

## The Relevance Objection

■ Aetna also asserted objections on the grounds of burdensomeness and relevance to plaintiffs' 19 requests for productions of documents. Ultimately, and for the reasons stated in my opinion, I denied plaintiffs' motion to compel as to 6 of the requests and granted it as to the remaining 13.

In such a situation, I am permitted but not required to "apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." Fed.R.Civ.P. 37(a)(4)(C). It appears to me that the apportionment this Rule contemplates must be a function of whether or not each objection that was overruled was substantially justified if this part of the rule is to be read in consonance with the rest of it. That determination requires me to review each objection for that purpose. I can, however, deal with several in gross.

As to the nine objections premised on irrelevance, I found that case law specifically condemned the vague, unspecific and general objections Aetna made and that Aetna's use of a particular phrase, that it would produce "relevant, non-privileged documents", obfuscated its actual intentions. In light of that conclusion, I cannot conclude that Aetna's position was substantially justified; the contrary is true.

As to Aetna's objection to produce the claims files,[5] I overruled the claims of attorney–client and work-product privileges and, as already explained, found that Aetna's position as to these privileges was not substantially justified.

The remaining objections which I overruled (RFP # 11 and # 14) were, in my view, substantially justified.

■ RFP # 11 sought the names and addresses of the employees who participated in handling the claims in the case that went to trial before Judge Greene. Aetna resisted disclosing these names, insisting that plaintiffs could not have *ex parte* contact with them and any depositions of them had to be arranged through Aetna's counsel. While I ultimately concluded that the names had to be surrendered, I warned counsel for plaintiffs of the authority for the proposition that *ex parte* contacts with these employees could lead, under certain circumstances, to disqualification. Given that authority, I cannot say that Aetna's position in refusing to answer was unjustified in the sense of being unreasonable.

■ As to RFP # 14, in which plaintiffs sought reserve information, there was a case in this Court which suggested that plaintiffs were not entitled to such information. While I found that authority distinguishable, and that there was authority in other courts for the proposition that reserve information is discoverable, the existence of the case in this Court arguably supporting Aetna's position renders that position "substantially justified."

Thus, I will ultimately apportion whatever reasonable expenses plaintiffs claim in moving to compel in the ratio of 13 to 19 or 68%.

## The Starrs

Jorge is not a party to this action but plaintiffs have sought discovery from him and his counsel, Irving Starr. When informal efforts to secure the file Irving Starr had generated in his representation of Jorge failed, plaintiffs noticed Mr. Starr's deposition and served a *subpoena duces tecum* upon him seeking several categories of documents which he had created or received during that representation. Mr. Starr's deposition was taken but, throughout it, his son, Richard Starr, who represented his father, asserted various objections and directed his father not to answer the questions.

## The Judicial Determination

I ultimately concluded that Irving Starr would have to surrender his file, despite his claims of attorney-client and work-product privilege. I also concluded that I would per-

5. These were sought by Requests for Production ("RFP") # 5 and # 6.

mit plaintiffs to depose Irving Starr once again[6] before me.

I rejected plaintiffs' effort to hold Mr. Starr in contempt. Instead, I asked the parties to show cause why I should not order the Starrs (father and son) to pay the expenses plaintiffs incurred in moving to compel the production of Irving Starr's file and to have Mr. Starr answer the questions he refused to answer during his first deposition.

### Expenses May Not Be Awarded under Rules 37 and 45

■ As to the file, plaintiffs' efforts to secure its expenses in moving to compel its production must fail. Irving Starr is not a party to this case and Fed.R.Civ.P. 37(a)(4) permits the award of expenses only against a "party or deponent whose conduct necessitated the motion [to compel]." While it could be argued that Mr. Starr, served with a *subpoena duces tecum*, commanding his attendance at a deposition, is a "deponent" and is therefore subject to Rule 37(a)(4) it must be recalled that *subpoenas, duces tecum, to* nonparties are dealt with by Fed. R. Civ. 45. Under that rule, a non party, like Mr. Starr, has 14 days in which to object to production. If he does, his obligation is stayed until the party serving the subpoena has moved to compel. Additionally, failure to comply without adequate excuse is punishable by Fed. R.Civ.P. 45(e) as contempt. Significantly, the rule says nothing about whether the person resisting the *subpoena* can be made to pay the expenses of moving to compel his production if the Court ultimately overrules his resistance.

To interpret the word "deponent" in Fed. R.Civ.P. 37(a)(4)(A) to authorize the award of expenses against a nonparty, potential deponent who objects to a *subpoena duces tecum* would be to make an award of expenses that Fed.R.Civ.P. 45 does not authorize even though the latter rules attempts to deal comprehensively with that precise situation. It would impute to the draftsmen a desire to deal indirectly in Rule 37 with a situation that Rule 45 deals with directly. Additionally, such an interpretation of Fed.R.Civ.P.

37(a)(4)(A) would permit the award of expenses against a non-party who is summoned to a deposition by a *subpoena duces tecum* but not against a non-party who is served only with a *subpoena* but fails to appear for his deposition. Such an irrational interpretation has nothing to recommend it.

### The Starrs' Position Was Not Substantially Justified

Unfortunately for the Starrs, however, Fed.R.Civ.P. 37(a)(4)(A) does expressly permit the award of expenses against a nonparty deponent or his attorney or both of them who refuses to answer a question or questions at a deposition whose answers have to thereafter be compelled. Thus, the Starrs remain vulnerable to plaintiffs' demand for their expenses occasioned by the direction of Richard Starr to his father not to answer certain questions. The question, once again, is whether that direction by Richard Starr and its acceptance by his father were "substantially justified."

■ As to one group of questions, the Starrs cannot possibly satisfy that criterion. At his son's instruction, Irving Starr refused to answer questions to which he did not claim any privilege. Instead, his objections were based on relevance, an unclear question, or that the question had been asked and answered. Such directions to the witness not to answer are specifically prohibited by Fed. R.Civ.P. 30(d)(1). Behavior that contravenes a Federal Rule of Civil Procedure cannot be substantially justified, and Fed.R.Civ.P. 37(a)(2)(B) requires the payment of expenses when this particular rule is disobeyed and the opponent is required to move to compel the answers. *See e.g., American Hangar, Inc. v. Basic Line, Inc.,* 105 F.R.D. 173, 176 (D.Mass.1985); *International Union of Electrical, Radio and Machine Workers, AFL– CIO v. Westinghouse Electric Corp.,* 91 F.R.D. 277 (D.D.C.1981).

■ On occasion, Irving Starr asserted the attorney-client privilege or the attorney-client privilege and the work-product privi-

---

**6.** I should note that I have not decided whether I will permit plaintiffs to ask any questions other than those which he refused to answer. I will hear from the parties during the deposition as to whether any additional questioning is appropriate.

leges as grounds for his refusal to answer a question. While Fed. R. Civ. 30(d)(1) permits a deponent to refuse to answer a question to preserve a privilege, the assertion of the privilege must be substantially justified if that refusal is to avoid the imposition of the sanctions Fed.R.Civ.P. 37(a)(4)(A) permits.

▮ I cannot find that Irving Starr's refusal to answer the questions he did on the instructions of his son to be substantially justified.

▮ First, I cannot find a single instance in Irving Starr's deposition as to which his son objected in which Mr. Starr was asked a question which would have required him to disclose anything Jorge, Jesus, or Alicia Iglesias told him in confidence for purpose of securing legal advice. As I explained in my prior opinion and earlier in this one, in this Circuit, the privilege is narrowly limited to the communication from the client to the attorney and protects only what the client says. It protects what the attorney says to the client only if it will reveal what the client told the lawyer. The only questions in which the claim of attorney-client privilege was even colorable were those dealing with the advice or recommendation that Irving Starr gave his clients. But, what is rapidly becoming the authoritative text in the field points specifically to the District of Columbia Circuit as one of the Circuits which construe the attorney-client privilege strictly. This text then states:

> When courts strictly construe the privilege as applied to lawyer communications, the communications will not necessarily be privileged, even if they contain legal advice discussed in the course of meetings or convey legal advice to the client. The strict-construction cases reason that a lawyer's communications can be privileged only derivatively—if disclosure of the lawyers' communications would reveal the content of the client's communication to the lawyer.

7. See 8 Charles Alan Wright, Arthur R.Miller & Richard L. Marcus, *Federal Practice and Proce-*

Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* 41 (1997).

Professor Epstein cites a decision by our Circuit Court of Appeals as an example of the strict construction, quoting from its holding as follows:

> *Mead Data Cent., Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 254 (D.C.Cir.1977). "The privilege applies to a confidential communication from an attorney to a client, but only if the information is based on confidential information provided by the client."

*Id.*

Thus, the assertion that what the lawyer tells the client is privileged even though it cannot possibly disclose what the client told the lawyer is simply not the law of this Circuit. To assert that it is, in the teeth of unequivocal authority that it isn't, is to take a position that cannot be described as "substantially justified", particularly when it was so easy for a lawyer to ascertain what the law was before asserting the privilege.

▮ The assertion of the work-product privilege by the Starrs is equally troubling. First, the work-product privilege contained in Fed.R.Civ.P. 26(b)(3) applies only to documents and tangible things[7] but the Starrs asserted the privilege as to questions to Irving Starr as to what he did. Second, the work-product privilege that rule recognizes applies, by its precise terms, only when discovery is sought by one party from another. Hence, there is substantial authority collected in an equally authoritative treatise that the work-product privilege does not apply unless one party seeks discovery from another party in the litigation which is before the court. 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure,* § 2024 at 354 and cases collected in footnote 17 (1994). Thus, Irving Starr, who is not a party to this lawsuit (or any other based on the accident) asserted a work-product privilege that the Federal Rules do not even recognize.

*dure,* (hereafter "Wright") § 2023 at 330 (1994).

■ The Starrs' position could be said to be substantially justified if they could point to authority in this Circuit or elsewhere for the proposition that what may be called "intangible work-product" has been held privileged from disclosure. Unquestionably, the courts have held that the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) should be interpreted to protect intangible work-product, even though it is not protected by Fed.R.Civ.P. 26(b)(3). *United States v. One Tract of Real Property*, 95 F.3d 422, 428 n. 10 (6th Cir.1996); *Maynard v. Whirlpool Corp.*, 160 F.R.D. 85 (S.D.W.Va.1995). But, that returns one back to the same beginning. *Hickman* dealt with the effort of one party to secure the work product of his opponent's attorney [8] and that is not the situation here. To the contrary, the work-product privilege was asserted against the party who, by assignment, could be able to claim it. Additionally, the Supreme Court, creating the privilege, nevertheless indicated that there would be circumstances in which it would have to yield to an urgent showing of need for otherwise privileged materials which could not be secured from any other source. *Hickman*, 329 U.S. at 511, 67 S.Ct. 385. Codifying that principle, Fed.R.Civ.P. 26(b)(3) indicates that the work-product privilege it creates may yield to a showing by a party that she has a substantial need for documents otherwise covered by that privilege and cannot obtain them elsewhere without substantial hardship. Here, Jorge, who was probing the precise topic of what Irving Starr had done or not done in his representation of Jorge and the Iglesias', could have made a compelling case that it was not merely a hardship but impossible for him to probe that topic if the privilege the Starrs were asserting for intangible work-product was recognized. To make it worse for the Starrs, the very case which created that privilege had acknowledged that it would have to yield under such circumstances.

Irving Starr, as the party subpoenaed, could have moved for protection from the subpoena under Fed.R.Civ.P. 45(3)(A)(iii) which expressly permits a person to resist a subpoena that compels the production of information which is privileged. Had he done so, I would have been forced to resolve the privilege questions presented prior to the deposition and may well have ordered it to be taken before me as I ultimately ruled after it was taken. Ironically, had the Starrs done so, and lost, plaintiff would not have been entitled to an award of expenses. Yet, and although the Starrs cannot possibly claim that they could not anticipate that Tommy's counsel would not probe areas they would ultimately claim to be privileged, they instead went forward with the deposition and resisted disclosure of the documents Tommy's counsel sought, claiming, in my view, privileges that do not exist. The resulting motion to compel was inevitable and I cannot possibly describe either the course of action they took nor the privileges they asserted during it as substantially justified. The course of action they chose was pregnant with a successful motion to compel and the legal positions they took were contradicted by all existing and easily-discovered authority. When one goes through that many red lights, one can hardly claim that it is unfair to pay for the resulting crash.

## CONCLUSION

For the reasons stated in this opinion I will award Tommy his expenses, to include attorney fees, against Aetna and the Starrs. I expect Tommy's counsel to seek only those expenses I have indicated I will permit and I will ultimately determine whether they are in all respects reasonable.

---

8. Note how carefully the Supreme Court defined the issue presented in *Hickman*:

> This case presents an important problem under the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, as to the extent to which a party may inquire into oral and written statements of witnesses, or other information, secured by an adverse party's counsel in the course of preparation for possible litigation after a claim has arisen. 329 U.S. at 497, 67 S.Ct. 385.