640 S.E.2d 176

**STATE of West Virginia, ex rel. ALL-STATE INSURANCE COMPANY, a corporation, and Joe Freme, Petitioners,**

**v.**

**Honorable Martin J. GAUGHAN, Judge of the Circuit Court of Ohio County, West Virginia, and Douglas Arensburg, Respondents.**

No. 33172.

Supreme Court of Appeals of West Virginia.

Submitted: Nov. 1, 2006.

Decided: Nov. 30, 2006.

---

P. Nathan Bowles, Jr., Esq., Charles M. Love, III, Esq., Bowles Rice McDavid Graff & Love, PLLC, Charleston, for Petitioners.

Robert P. Fitzsimmons, Esq., Fitzsimmons Law Offices, Michael W. McGuane, Esq., McGuane Law Offices, Thomas E. McIntire, Esq., Thomas E. McIntire & Associates, LC, Wheeling, for Respondent Douglas Arensburg.

PER CURIAM.

In this petition for a writ of prohibition, we are asked to review whether a circuit court's discovery order was overbroad and unduly burdensome.

As set forth below, we deny the writ of prohibition.

### I.

This case is a petition for a writ of prohibition filed by petitioners and defendants-below Allstate Insurance Company and Joe Freme (hereafter referred to collectively as "Allstate").

Respondent and plaintiff-below Douglas Arensburg owned a house in Wheeling, West Virginia that was insured by Allstate. On April 16, 2002, the house was damaged by a fire. The adjuster employed by Allstate, Mr. Freme, inspected the house and declared the damage a "partial loss." A contractor inspected the house and estimated the repairs would cost $21,330.48. Allstate approved the estimate and agreed to pay the cost of the repairs.

Shortly thereafter, Mr. Arensburg informed Allstate that he would do the repairs himself. Allstate sent the contractor a check for $3,957.56 for initial work performed on the house, and sent Mr. Arensburg a check for $14,357.74. Mr. Arensburg, noticing that the two checks totaled $3,015.18 less than the

estimated cost of repairs, demanded that Allstate pay to him the balance of the estimate. Allstate refused, contending that when insureds performed their own repairs on their property, Allstate was entitled to reduce the cost of the repairs by Allstate's estimate of the contractor's overhead and profit.

Mr. Arensburg hired a lawyer, and the lawyer demanded that Allstate explain its actions and identify the insurance policy provisions upon which it was refusing to pay Mr. Arensburg the remaining $3,015.18. Allstate did not provide an explanation, but instead sent the lawyer a check for $993.46 as the "balance of the claim." [1]

On March 28, 2003, respondent Arensburg brought suit against petitioners Allstate and Mr. Freme seeking compensatory and punitive damages for breach of contract, breach of the duty of good faith and fair dealing, and violation of the West Virginia Unfair Trade Practices Act, *W.Va.Code*, 33–11–1 to 33–11–10. The respondent also sought class action relief, contending that there existed a class of Allstate policyholders whose insurance payments in partial loss claims, where the policyholders performed the repairs rather than a contractor, were wrongfully reduced by Allstate's estimate of the contractor's overhead and profit.[2]

Along with the complaint, counsel for Mr. Arensburg served numerous discovery requests upon Allstate. Among these were Request for Production No. 5 and Interrogatory No. 10, each of which sought information related to Allstate's general business practices over a 20–year period. The respondent's discovery requests sought information regarding

[a]ll claims files wherein Allstate deducted and/or withheld any monies for alleged profit and/or overhead on first party claims for damage to real property, including dwellings and other structures, in West Virginia for the period from 1983 to the present.

Allstate objected to the discovery requests on the grounds that they were overbroad, unduly burdensome and oppressive. After the respondent filed his first motion to compel Allstate to respond to the request, on May 27, 2004, Allstate filed a reply arguing that it would purportedly cost $553,500.00, excluding attorney time, to review 18,000 first-party real property damage claim files closed in the preceding ten-year period to produce the requested information.[3]

On June 18, 2004, the circuit court ordered Allstate to comply with the discovery request, but directed that the production "be done in stages." When Allstate failed to comply with the order, the respondent filed a second motion to compel. In a hearing on this second motion, the circuit court directed the parties to see if they could come to some agreement with regard to limiting the files and information that were subject to the respondent's discovery requests.

The parties subsequently conferred, and it appears the respondent limited his request to only the preceding ten years of first-party, real property damage claim files. Furthermore, the respondent limited his request to only those West Virginia claim files with settlements greater than $2,500.00. Allstate then conducted a review of its files, and produced ten files that met the respondent's

1. Respondent Arensburg states that Mr. Freme, the Allstate adjuster, later testified that he did not know how he arrived at this figure, but says that it may reflect that Allstate charged Mr. Arensburg—improperly—for the expense of Allstate's arson investigation of Mr. Arensburg and the fire damage to his property.

2. The respondent asserts that, under most insurance policies, an insured homeowner who suffers a partial loss to property is entitled to recover from an insurer the fair market cost of conducting repairs and returning the property to its preloss state. Those fair market costs include a contractor's overhead and profit. The respon-

dent asserts that an insured homeowner can use any contractor to do any repairs, or can use the money to do the repairs him- or herself to either save money or—as a matter of quality and pride—do the repairs in a different, better, or more thorough manner. The respondent contends that the manner in which the policy proceeds are applied is left to the discretion of the homeowner.

3. An affidavit of an Allstate employee states it would take 18,000 hours of work by Allstate personnel and another 4,500 hours of paralegal time to respond to the request.

discovery requests for the years 2000 and 2001.[4]

The respondent then requested that All-state produce additional files for the years 1993 through 1999, 2002 and 2003.

Allstate responded by filing, on December 7, 2005, a motion for a protective order. Allstate asserted that further examination of its claim files would be unduly burdensome because, even with the limitations on discovery agreed to by the respondent, the respondent's requests required a review of an average of "350 files per year in 2000 and 2001." [5] Allstate further claimed that each year's review cost about $7,000.00 in attorney time.

■ Respondent Arensburg then filed his third motion to compel Allstate to respond to the discovery requests. The respondent asserted to the circuit court that the claim files sought were relevant with regard to (1) proving Allstate's general business practices in violation of the Unfair Trade Practices Act; [6] (2) supporting the right to punitive damages and the amount of punitive damages warranted by other bad acts by Allstate; and (3) ascertaining other potential class members affected by Allstate's actions.

After reviewing several briefs by the parties, and hearing argument, on June 21, 2006, the circuit court entered an order granting the respondent's motion to compel and denying Allstate's motion for a protective order. In its order, the circuit court cited the standard for reviewing whether a discovery request is unduly burdensome that was set forth in Syllabus Point 3 of *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992).[7] The circuit court also noted the respondent's assertion that he was seeking "a review of the other eight (8) years" of claim files that Allstate had not yet inspected, and Allstate's assertions regarding the cost of reviewing those files. The circuit court then concluded that "while Request No. 5 and Interrogatory No. 10 are burdensome, the discovery requests are not overly burdensome and do not qualify as oppressive."

On July 26, 2006, Allstate filed a petition for a writ of prohibition with this Court seeking to halt enforcement of the circuit court's July 21, 2006 order.

## II.

Regarding cases seeking a writ of prohibition, *W.Va.Code*, 53–1–1 [1923] provides that "[t]he writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers."

■ This Court is "restrictive in its use of prohibition as a remedy." *State ex rel. West Virginia Fire & Cas. Co. v. Karl*, 199 W.Va. 678, 683, 487 S.E.2d 336, 341 (1997). We have held that "[p]rohibition lies only to

---

4. Allstate's review identified ten claim files similar to the respondent's case; the respondent's attorneys contend they have located an additional three cases which were not identified by Allstate.

5. Specifically, Allstate informed the circuit court that it reviewed 743 paper files which took eight working days and an average of five management level staffers.

6. To successfully prosecute a claim alleging that an insurance company has violated the Unfair Trade Practices Act, it must be shown that the insurance company violated the Act as a "general business practice." *See* Syllabus Point 3, *Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981) ("More than a single isolated violation of W.Va.Code, 33–11–4(9), must be shown in order to meet the statutory requirement of an indication of 'a general business practice,' which requirement must be shown in order to maintain the statutory implied cause of action."); Syllabus Point 4, *Dodrill v. Nationwide Mut. Ins. Co.*, 201 W.Va. 1, 491 S.E.2d 1 (1996) ("To maintain a private action based upon alleged violations of W.Va.Code § 33–11–4(9) in the settlement of a single insurance claim, the evidence should establish that the conduct in question constitutes more than a single violation of W.Va.Code § 33–11–4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a 'general business practice' and can be distinguished by fair minds from an isolated event.").

7. We discuss the *Stephens* opinion in greater detail in Section III of this Opinion.

restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari." Syllabus Point 1, *Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d 370 (1953). Here, Allstate claims that the circuit court has exceeded its legitimate powers. We held in Syllabus Point 4 of *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996):

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

■ "A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syllabus Point 1, *State Farm Mut. Auto. Ins. Co. v. Stephens,* 188 W.Va. 622, 425 S.E.2d 577 (1992).

### III.

The petitioners in this case contend that the circuit court abused its discretion by denying Allstate's motion for a protective order, and by ordering Allstate to comply with the respondent's discovery requests. Allstate argues that the circuit court wholly failed in its analysis of whether the respondent's discovery requests were unduly burdensome and expensive.

■ In Syllabus Point 2 of *State Farm Mut. Auto. Ins. Co. v. Stephens,* 188 W.Va. 622, 425 S.E.2d 577 (1992), we made clear that a circuit court may limit discovery under Rule 26 of the *Rules of Civil Procedure* if the discovery request is too burdensome:

Under Rule 26(b)(1)(iii) of the West Virginia Rules of Civil Procedure, a trial court may limit discovery if it finds that the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

The decision whether to issue a protective order is based on a balancing of several factors. In Syllabus Point 3 of *Stephens* we laid out the following guidelines:

Where a claim is made that a discovery request is unduly burdensome under Rule 26(b)(1)(iii) of the West Virginia Rules of Civil Procedure, the trial court should consider several factors. First, a court should weigh the requesting party's need to obtain the information against the burden that producing the information places on the opposing party. This requires an analysis of the issues in the case, the amount in controversy, and the resources of the parties. Secondly, the opposing party has the obligation to show why the discovery is burdensome unless, in light of the issues, the discovery request is oppressive on its face. Finally, the court must consider the relevancy and materiality of the information sought.

■ The first factor in the *Stephens* analysis requires a trial court to weigh the requesting party's need to obtain the information against the burden that producing the information places on the opposing party. As we stated in Syllabus Point 3 of *Stephens,* "This requires an analysis of the issues in the case, the amount in controversy, and the resources of the parties."

The respondent argues that the information sought in his discovery requests goes to the heart of the case and is relevant (1) to showing Allstate's general business practices in handling certain types of first-party real property damage claims, an essential element of a claim for violation of the Unfair Trade Practices Act; (2) to showing a right to punitive damages; (3) to showing other bad acts; and (4) to identifying potential class members. The respondent further argues that, by Allstate's own admission, the review will involve approximately 350 case files per year at a cost of about $7,000.00 in attorney time—or, extrapolated to the full ten years of information sought, about 3,500 case files costing $70,000.00. We find that the respondent's need to obtain the information sufficiently outweighs the burden that producing the information places on Allstate.

■■■ The second factor in the *Stephens* analysis requires Allstate to show why the discovery request is unduly burdensome "unless, in light of the issues, the discovery request is oppressive on its face." To be successful, a party seeking a protective order must do more than make unsubstantiated or conclusory statements that a discovery request is overly broad and burdensome. *See, e.g., Cory v. Aztec Steel Bldg., Inc.*, 225 F.R.D. 667, 672 (D.Kan.2005) *quoting Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D.Kan.2002) (a party seeking a protective order must submit evidence or affidavits providing "sufficient detail in terms of time, money and procedure required to produce the requested documents."); *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 (D.Kan.2005) (same); *Carlson v. Freightliner LLC*, 226 F.R.D. 343, 370 (D.Neb.2004) ("An objection that discovery is overly broad and unduly burdensome must be supported by affidavits or evidence revealing the nature of the burden and why the discovery is objectionable." Statement that discovery request would require party "to expend considerable time and effort analyzing 'huge volumes of documents and information'" insufficient to require a protective order); *United States ex rel. Fisher v. Network Software Assocs.*, 217 F.R.D. 240, 246 (D.D.C.2003) (same).

The circuit court agreed with Allstate that the discovery requests were "burdensome." However, based upon the statements made by Allstate, the circuit court concluded that Allstate had not demonstrated that the requests were "unduly burdensome." On the record presented to this Court, we see no clear error in the circuit court's conclusion.

■■■ The third ·and final factor which a trial court must consider under *Stephens* is the relevancy and materiality of the information sought. As we stated in Syllabus Point 4 of *Stephens*:

The question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried. However, under Rule 26(b)(1) of the West Virginia Rules of Civil Procedure, discovery is not limited only to admissible evidence, but applies to information reasonably calculated to lead to the discovery of admissible evidence.

Allstate argues that it would be futile to allow discovery to proceed because the information sought by the respondent is not relevant. Allstate argues that the respondent cannot pursue discovery in order to identify potential class members because the respondent is not a member of the proposed class, and has no standing to represent the class.

Many of the relevancy arguments raised by Allstate in its petition for a writ of prohibition were previously raised in 2004 in a series of motions to the circuit court, motions which challenged the respondent's claim for class action relief in his complaint. Allstate concedes that the respondent has never filed a motion seeking class certification. Instead, on February 13, 2004, Allstate attempted to preempt the respondent's ability to pursue a class action by filing a "Motion for an Order Determining That This Action May Not Be Maintained as a Class Action." In an order dated June 8, 2004, the circuit court denied the motion, stating:

[T]his Court will defer ruling on the issue of class certification until a later date and only after such time as the Court has had the opportunity to consider evidence deal-

ing with all of the requirements of Rule 23(a) [of the *Rules of Civil Procedure* that pertain to the institution and management of a class action].

In the instant petition, Allstate restates many of the same arguments it made in 2004 before the circuit court, but now raises those arguments in the context of a challenge to the circuit court's June 2006 discovery order.

 Allstate's first relevancy argument is that the respondent's underlying claim for reimbursement for overhead and profit damages is moot, because Allstate allegedly paid him the disputed overhead and profit before he filed suit. Respondent replies to this argument by pointing out that Allstate paid only $993.46, an amount that Mr. Freme apparently admitted was not full payment. Further, the respondent points out that he is also seeking punitive damages, attorney's fees, and damages for aggravation and inconvenience. *See* Syllabus Point 1, *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986) ("Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience."). The respondent argues, and we agree, that the respondent is seeking damages that are separate and apart from the claim for the policy amounts withheld by Allstate under the rubric of "overhead and profit."

 Allstate also argues that the respondent does not have standing to represent the class because he suffered a total, rather than a partial, loss. Allstate argues that, in discovery, the respondent claimed for the first time that his property was condemned by the City of Wheeling as a result of the fire. Allstate reviewed the respondent's contentions, and forty-five days later paid respondent Arensburg's complaint as a *total* loss claim. Allstate sent the respondent a check for the remaining amount under his policy limits.[8] Allstate therefore asserts that because the respondent has been paid for a *total* loss, he cannot pursue a class action that includes individuals who suffered a *partial* loss.

Taken one step further, Allstate argues that because the respondent does not have standing to represent the class, he cannot seek discovery regarding the members of that class.

The respondent vigorously contests Allstate's assertion that the respondent does not have the standing or ability to pursue a class action. The respondent argues that, even if the case could not be maintained as a class action by the respondent, the discovery sought is still relevant and material to establishing other bad acts by Allstate for purposes of showing a general business practice of violating the Unfair Trade Practices Act, and for purposes of punitive damages.

In *Stephens, supra,* we expressly found that discovery requests comparable in breadth to the respondent's requests were relevant and discoverable to establish bad faith and a violation of the Unfair Trade Practices Act. We held in *Stephens* that the plaintiff insureds' discovery requests, which sought information as to "every claim filed against [State Farm,] nationwide, [for a 10-year–period] since 1980 which involved allegations of bad faith, unfair trade practice violations, excess verdict liability, or inquiries from insurance industry regulators concerning State Farm's handling of claims," 188 W.Va. at 625, 425 S.E.2d at 580, were relevant to the issues involved in the insureds' Unfair Trade Practices Act lawsuit against State Farm.[9] As we said further in *Stephens:*

> In the present case, the information requested by the plaintiffs was relevant to

---

8. Respondent Arensburg had policy limits of $66,000.00. Allstate therefore mailed him a check for $50,649.07 ($66,000.00 minus amounts already paid to Mr. Arensburg: $14,357.74 and $993.46).

9. We note, however, that while we found in *Stephens* that the plaintiffs' discovery request sought relevant information, we went on to find that the request for a *nationwide* review of claim files was probably unduly burdensome. We suggested that the "logical approach" for the circuit court "would be initially to narrow the scope of the interrogatories to other similar claims filed against State Farm in West Virginia." 188 W.Va. at 630, 425 S.E.2d at 585.

the issues involved in the civil action below. In *Jenkins v. J.C. Penney Casualty Insurance Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981), we recognized that to prove a violation of the Unfair Trade Practices Act, W.Va.Code, 33–11–1, *et seq.,* the plaintiff must show more than one violation of the statute. Thus, the plaintiffs' request for information of other unfair trade practices claims against State Farm was relevant to prove their own allegations in that regard. Likewise, the plaintiffs' interrogatories sought information relevant to their bad faith claim which carried with it the potential for punitive damages. Other courts have recognized that in a bad faith claim against an insurance carrier, previous similar acts can be shown to demonstrate that the conduct was intentional.

This type of related-acts evidence is admissible at trial under Rule 404(b) of the West Virginia Rules of Evidence. *See generally* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 6.6 (1986 & Cum.Supp.1992).

188 W.Va. at 628–29, 425 S.E.2d at 583–84 (footnotes and citations omitted).

In the instant case, the information sought in the respondent's discovery requests is clearly relevant and material to determining whether Allstate violated the Unfair Trade Practices Act as a general business practice, and whether Allstate acted with the requisite bad faith or malice required for the imposition and calculation of punitive damages. The information sought through discovery substantively bears on the issues which the respondent hopes to be resolved at trial.

 Moreover, Allstate's arguments as to mootness and standing, at best, seem to be fact-based and not ripe for consideration. These class action issues are tangentially related to the issue before us: whether the circuit court abused its discretion in ruling that the discovery requests were not unduly burdensome. Furthermore, these class action issues are premature, because the circuit court specifically deferred consideration of the validity of a class action in June 2004 until a full record was developed by the parties.

Accordingly, under the standards set forth in *Stephens,* we conclude that the respondent's discovery requests appear to meet the relevancy and materiality test.

On the issue that is before us, we do not believe that the circuit court erred in its assessment that Allstate did not establish that the respondent's discovery requests were unduly burdensome. Under the factors established in *Stephens,* Allstate was not entitled to a protective order. Because the circuit court did not commit a clear legal error resulting from a substantial abuse of discretion, a writ of prohibition is not warranted.

### IV.

After a careful review of the record presented and the briefs and arguments of the parties, we cannot conclude that the circuit court abused its discretion in requiring Allstate to respond to the respondent's discovery requests. We therefore decline to issue a writ of prohibition to halt the enforcement of the circuit court's June 21, 2006, order.

Writ Denied.