487 S.E.2d 336

**STATE of West Virginia ex rel. WEST VIRGINIA FIRE & CASUALTY COMPANY and Joe Kirtner, Petitioners,**

**v.**

**The Honorable Mark A. KARL, Judge of the Circuit Court of Marshall County, West Virginia, Jimmy Lee Price, and Nora Lee Price, Respondents.**

**STATE of West Virginia ex rel. WEST VIRGINIA FIRE & CASUALTY COMPANY; Chicago Insurance Company; Interstate Indemnity Company; State Farm Fire and Casualty Company; State Farm General Insurance Company; State Farm Mutual Automobile In-**

surance Company; The Celina Mutual Insurance Company; Republic Mutual Insurance Company; West Virginia Farmers Mutual Insurance Company and Canal Insurance Company, Petitioners,

v.

Honorable John T. MADDEN, Judge of the Circuit Court of Marshall County, Megan Barker, Bradley Barker, and All Others Similarly Situated, and Robert P. Fitzsimmons, Michael W. McGuane, and Thomas C. Schultz, Respondents.

Nos. 23944, 23986.

Supreme Court of Appeals of West Virginia.

Submitted March 25, 1997.

Decided May 29, 1997.

**680**

James A. Varner, Catherine D. Munster, Gregory H. Schillace, McNeer, Highland, McMunn and Varner, L.C., Clarksburg, for Petitioners.

R. Carter Elkins, Laura Gray, Campbell, Woods, Bagley, Emerson, McNeer and Herndon, Huntington, for State Farm Petitioners.

Robert P. Fitzsimmons, Russell Jay Guthrie, Fitzsimmons Law Office, Wheeling, Michael W. McGuane, Thomas C. Schultz, Wheeling, for Respondents.

Thomas V. Flaherty, Flaherty, Sensabaugh & Bonasso, Charleston, for Amici Curiae Continental Casualty Company, et al.

Heather Heiskell Jones, J. Michael Weber, Dean A. Furner, Spilman, Thomas & Battle, Parkersburg, for Amici Curiae The West Virginia Insurance Federation, et al.

Boyd L. Warner, G. Thomas Smith, Waters, Warner & Harris, Clarksburg, for Amicus Curiae United States Fidelity and Guaranty Company.

Eric K. Falk, Davies, McFarland & Carroll, P.C., Pittsburgh, PA, for Amici Curiae Tokio Marine & Fire Insurance and Houston General Insurance Company.

Richard C. Polley, Pittsburgh, PA, S. Jane Anderson, Gail W. Kahle, Dickie, McCamey & Chilcote, Wheeling, for Amici Curiae Quaker City Insurance Company, et al.

Mary H. Sanders, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, for Amici Curiae Shelby Insurance Company, et al.

Robert G. Steele, Steptoe & Johnson, Clarksburg, for Amici Curiae Church Mutual Insurance Company, et al.

David L. Wyant, Shuman, Annand & Poe, Wheeling, for Amici Curiae Dairyland Insurance and Sentry Insurance.

Brent L. Kesner, Kesner, Kesner & Bramble, Charleston, for Amici Curiae Ohio Farmers Insurance Company, Westfield Insurance Company and Westfield National Insurance Company.

Joseph J. Bosick, Pietragallo, Bosick & Gordon, Pittsburgh, PA, for Amici Curiae Coregis Insurance Company, et al.

Phillip L. Schwartz, American Insurance Association, Inc., Washington, DC, J. Michael Weber, Spilman, Thomas & Battle, Parkersburg, for Amici Curiae Acceleration National Insurance Company and Yashuda Fire & Marine of America.

STARCHER, Justice:

These are petitions for writs of prohibition from the Circuit Court of Marshall County. In the underlying cases, insurance companies for insureds who had injured a child paid money to the parents of the injured children and obtained the parents' signatures on settlement releases without obtaining court approval of the settlements.

The Circuit Court of Marshall County concluded that *W.Va.Code*, 44–10–14 [1929] requires court approval of all such settlements. The insurance companies ask that we determine that this conclusion was incorrect. We conclude that this statute does not require court approval of all such settlements, and we grant a writ of prohibition as moulded, directing the circuit court not to proceed under an incorrect legal conclusion.

I.

*Facts and Background*

These petitions for writs of prohibition involve two underlying cases from the Circuit Court of Marshall County. We have consolidated them for purposes of argument and decision. In the first case, the respondents (plaintiffs below), Jimmy Lee Price (an infant) and his mother Nora Lee Price, have sued the petitioners (defendants below) West Virginia Fire & Casualty Insurance Company ("WVF & C") and its claims representative, Joe Kirtner ("the Price case"). In the second case, the respondents (plaintiffs below), Meagan Barker (an infant) and her father Bradley Barker, individually and on behalf of all others similarly situated, have sued the petitioners (defendants below) Nationwide Mutual Insurance Company and its claims representative G. Greg Sherman, and a large number of other insurance company defendants ("the Barker case").

In both lawsuits, the complaints allege violations of *W.Va.Code*, 33–11–4(9) [1985] (un-

fair claims settlement practices), the tort of outrage and fraud. The gravamen of the two lawsuits is the respondents' contention that the petitioners have paid money to and obtained settlement releases from the parents of injured children, where there was no litigation pending, to settle tort claims against the petitioners' insureds (we shall refer to such cases as "infant settlements") [1]—in a fashion that was wrongful, illegal and actionable.

The petitioners request that this court prohibit the circuit court from proceeding in either case upon the premise that the provisions of *W. Va.Code*, 44–10–14 [1929] [2] require court approval of all infant settlements. [3]

In the Price case, the Circuit Court of Marshall County has entered an order requiring the production of WVF & C's claim files for the past ten years for other West Virginia infant settlements which were not approved by a court. In this order, the circuit court stated that *W.Va.Code*, 44–10–14 [1929] "requires an infant settlement proceeding where a minor is injured in his person or property." While it does not appear

---

1. An "infant settlement," as this opinion uses the term, therefore means a settlement regarding the claims and injuries of a minor where a lawsuit has not been filed, and is different from a settlement where a lawsuit has been filed. Where a lawsuit has been filed regarding the minor's claims and injuries, the provisions of *W.Va.Code*, 56–10–4 [1982] state in part:

    In any action or suit wherein an infant or insane person is a party, the court in which the same is pending, or the judge thereof in vacation, shall have the power to approve and confirm a compromise of the matters in controversy on behalf of such infant or insane person, if such compromise shall be deemed to be to the best interest of the infant or insane person.

2. *W.Va.Code*, 44–10–14 [1929] states:

    In any case where an infant is injured in his person or his property by another, the legal guardian of such infant may negotiate with the person inflicting such injury for the settlement of any claim for damages therefor. But the guardian shall, when proceeding under this section, before making final settlement, file his petition in equity with the circuit court of the county, or judge thereof in vacation, in which he was appointed, for permission to settle such claim, in which petition he shall state the name and age of his ward, the nature and character of the injury, and the facts relied upon by him to induce the court or judge to approve such proposed settlement. The court, or judge thereof in vacation, shall appoint a guardian ad litem for the ward who shall answer the petition. Upon the hearing thereof, the court or judge thereof in vacation, may grant or refuse the petition by a proper order, as may seem just and proper. In case the court or judge shall grant the petition, there may be included in such order permission to the guardian to pay to his attorney such amount in connection with the settlement of the claim as in the discretion of the court or judge is reasonable and proper, taking into consideration the amount to be paid as damages, the necessi-

ties of the infant, the nature of the injury, the probability of recovery in case of suit, the difficulties involved in effecting the settlement, and such other matters as may properly have a bearing on the reasonable compensation to be allowed such attorney. In case the court or judge approves the prayer of the petition, the guardian may be authorized to settle and receive the amount of the settlement, and to execute to the tort-feasor a release therefor. Before so doing he shall execute a bond in an amount equal to the approved settlement, unless he be already under bond sufficient for the purpose, with surety or sureties approved by the clerk of said court, conditioned to account for and pay over the amount of the approved settlement as required by law, which bond shall be filed and recorded by the clerk.

The release to the tort-feasor may be in form or effect as follows:

I, .........., the guardian of .........., in consideration of the sum of $.........., and under authority of an order of the circuit court of .......... county, entered on the .......... day of .........., 19 ..., do hereby release .......... from all claims and demands on account of injuries inflicted upon my said ward (or my said ward's property, as the case may be) by said .......... on the .......... day of .........., 19 ..., at .......... (here state the place or places).
................................
Guardian of

After receiving such release from the guardian of an infant who has been injured in his person or in his property by such person, the tort-feasor shall be forever acquit therefor.

*Nothing in this section contained shall be construed as preventing any tort-feasor from settling any such claim in any of the modes now recognized by law.* (emphasis added).

3. In both cases the petitioners also request that we prohibit the circuit court from requiring the petitioners to produce claim files of other infant settlements; that we prohibit the circuit court from considering or granting class certification; and that we rule that the respondents may not go

that such a ruling has been made in the Barker case, a discovery request for claim files similar to the request at issue in the Price case is pending in the Barker case.

It is apparently undisputed that the petitioners did not seek or obtain court approval forward with claims for unfair claim settlement practices under *W.Va.Code*, 33–11–4(9) [1985].

4. The release signed in the Barker case read as follows:

### RELEASE OF ALL CLAIMS

FOR AND IN CONSIDERATION OF the payment to me/us the sum of Five Thousand and 00/100 ($5,000.00) dollars, and other good and valuable consideration, I/we, being of lawful age, have released and discharged, and by these presents do for myself/ourselves, my/our heirs, executors, administrators and assigns, release, acquit and forever discharge [name omitted] and any and all other persons, firms and corporations, whether herein named or referred to or not, of and from any and all past, present and future actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, third party actions, suits at law or in equity, including claims or suits for contribution and/or indemnity, of whatever nature, and all consequential damage on account of, or in any way growing out of any and all known and unknown personal injuries, death, and/or property damage resulting or to result from an accident that occurred on or about 10–05–1994 at or near RT 2 & VA. ST—NEW MARTINSVILLE.

I/we hereby declare and represent that the injuries sustained may be permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent and duration of said injuries, and that I/we have not been influenced to any extent whatever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any persons representing him or them, or by any physician or surgeon by him or them employed.

I/we understand that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the persons, firms and corporations hereby released by whom liability is expressly denied.

It is agreed that distribution of the above sum shall be made as follows: As the minor claimant's parents see fit. Please note that the above stated amount is in addition to $581.80 in medical bills already paid directly to the providers by Nationwide Insurance.

for paying money to and obtaining releases from the Price and Barker parents (who were not represented by counsel when they signed the releases) [4]; and that the petitioners have acted in a similar fashion in numerous other instances.[5] We conclude that the

5. In the Price case, the deposition of the petitioner WVF & C's employee included the following testimony:

Q You would agree that liability, after January 4, 1996, existed and the company was going to have to pay for damages incurred by these two boys; is that a fair statement?

A Yes.

Q Now, the $5,000.00, what did that represent?

A That was—what I was told was that was money that would be for Jimmy Price and for him being injured and going through the pain of having a head injury, or having injuries.

Q And that was without having ever seen any medical records to ascertain what the true extent of his damages and injuries were; is that correct?

A Yes.

Q And are you to give the same interest of a claimant, who has damages and injury, as you do to your company in trying to evaluate these claims fairly?

A Yes, sir.

Q And so if you were to give the same regard to Jimmy Price as you do to your insurance company, your boss, your employer, you should have evaluated these particular headaches—you or somebody for the company; right?

A If they did not—if they did not want to settle the claim, yes.

Q Well, you can't just let people blindly go in and on behalf of this insurance company for the rest of his life believing probably they didn't know whether or not the headaches were, in fact, caused from the accident; is that right?

A Not for the rest of his life. My understanding was that he could potentially file an additional claim when he reached the legal age.

Q This company intentionally went in and offered money and told you that this could be opened up later on, then; right? They intentionally did that; didn't they?

A I'm not sure when I was told—whether it was prior to the offer or not. It was in the process of when we were going to settle it. I would say it was probably prior to me offering the $5,000.00.

Q Now, that's an important thing for a parent to know—that you could reopen one of these things; right? Wouldn't you think that was pretty important for a parent? By the way, are you a parent?

A Yes, sir, I am.

Q Don't you think that's pretty important for your child to know—that if they had an injury and they had problems in the future you

issue of whether *W.Va.Code,* 44–10–14 (1929) requires court approval of all infant settlements is a substantial, clear-cut narrow legal issue that is before the circuit court in both of the underlying cases.

## II.

### *Standard of Review*

▅ This Court is restrictive in the use of prohibition as a remedy. " ' "In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disput-

could just go back to court and reopen it and get money?

A  I don't know if you'd consider it important or not.

Q  How about you, as a parent; if your child had been injured—and God forbid that your child would ever be injured—but assuming that a child would be injured and you were the parent, wouldn't you want to know if you had the rights, if problems came up in the future, that you go to court with no problem and have the insurance company come back in and start paying additional monies?

A  Would I want to know?  Probably.

Q  You would consider that a material part of the settlement that people should know if they're going to actually understand what they are settling for; right?

A  I would consider that something that could be talked about, yes.

Q  Did you ever tell Mrs. Price that?

A  I don't believe so, no.

Q  Did you ever write her a letter and tell her that?

A  No, sir.

Q  Did you present a release to her to sign?

A  Yes, sir.

Q  Did that release not include that information?

A  I don't believe so.

Q  So, this material, important information about coming back into court later on in life for the child, up to the time of majority, was never communicated to Mrs. Price; is that correct?

A  That's correct.

Q  Never communicated to Jimmy Price; right?

A  Not by me.

ed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."  Syllabus Point 1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979).' Syllabus Point 12, *Glover v. Narick,* 184 W.Va. 381, 400 S.E.2d 816 (1990)."  Syllabus Point 1, *State ex rel. Doe v. Troisi,* 194 W.Va. 28, 459 S.E.2d 139 (1995).  We give questions of law and statutory interpretations a *de novo* review.  Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

In the instant case, our determination of the narrow legal issue presented by the statute in question will serve the purposes articulated in the foregoing standard.  Our determination herein is not dispositive of the discovery and bad faith issues which are properly within the province of the trial court in the underlying, pending proceedings.[6]  Hence, our discretionary use of the writ of prohibition is indicated.

Q  To your knowledge, not by anybody from this company; right?

A  That's correct.

**6.**  We decline the petitioners' request that we address the issues of:  whether the respondents should or should not be entitled to pursue discovery of claim files or other information regarding other infant settlements to prove violation of *W.Va.Code,* 33–11–4(9) [1985] and to prove punitive damages, *cf.  State Farm Mut. Auto. Ins. Co. v. Stephens,* 188 W.Va. 622, 425 S.E.2d 577 (1992) (evidence of other unfair acts is relevant to establish a violation of *W.Va.Code,* 33–11–4(9) [1985]); *cf. also Poling v. Motorists Mut. Ins. Co.,* 192 W.Va. 46, 450 S.E.2d 635 (1994) (punitive damages available under *W.Va.Code,* 33–11–4(9) [1985]); *cf. also Colonial Life and Accident Ins. Co. v. Perry,* 31 Cal.3d 785, 183 Cal.Rptr. 810, 647 P.2d 86 (1982) (writ of prohibition denied, discovery of claim files permitted); whether the respondents may obtain discovery regarding or otherwise seek class certification, *cf. Burks v. Wymer,* 172 W.Va. 478, 485, 307 S.E.2d 647, 654 (1983) ("[I]n most cases, an exploration beyond the pleadings is essential to make an informed judgment on the propriety of a proposed ... class action."); whether misleading or failing to inform parents regarding the terms of an infant settlement may be an unfair claims settlement practice under *W.Va.Code,* 33–11–4(9) [1985]; and whether the respondents must void a completed infant settlement which did not receive court approval before maintaining an action for unfair claims settlement practices under *W.Va.Code,* 33–11–4(9) [1985].  These are matters which are within the province of the circuit court in the underlying, pending cases.

### III.

#### Discussion

The statute at issue, *W.Va.Code,* 44–10–14 [1929], states, in part:

In any case where an infant is injured in his person or his property by another, the legal guardian of such infant may negotiate with the person inflicting such injury for the settlement of any claim for damages therefor. But the guardian shall, *when proceeding under this section,* before making final settlement, file his petition in equity with the circuit court of the county, or judge thereof in vacation, in which he was appointed, for permission to settle such claim ...

\* \* \* \* \* \*

*Nothing in this section contained shall be construed as preventing any tort-feasor from settling any such claim in any of the modes now recognized by law.* (emphasis added).

We begin by examining the pertinent language of the statute itself. "[C]ourts should not ordinarily stray beyond the plain language of unambiguous statutes ... [except in exceptional circumstances] in which there is a clearly expressed legislative intent to the contrary, in which a literal application would defeat or thwart the statutory purpose; or in which a literal application of the statute would produce an absurd or unconstitutional result[.]" *State ex rel. Frazier v. Meadows,* 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994) (citations omitted).

■ The initial sentence of *W.Va.Code,* 44–10–14 [1929] permits a guardian to negotiate on behalf of an injured infant, and then provides that "the guardian shall, *when proceeding under this section,* before making final settlement ..." follow certain procedures for obtaining court approval. *Id.* (emphasis added). This statutory language by clear implication contemplates that a guard-

ian may elect not to proceed under the provisions of this section.

Additionally, the statute's final sentence explicitly states that the statute does not "[prevent] ... any *tort-feasor* from settling any such claim in any of the modes now recognized by law...." *Id.* (emphasis added). This statutory language also contemplates that a tort-feasor may elect not to proceed under this section.

Therefore, the statutory language plainly contemplates that both parties to an infant settlement—the guardian and the tort-feasor—may elect not to proceed under the provisions of the statutory section in question.

Additional support for this interpretation is found in the language of the title of the original Act, which reads:

Guardian of injured infant may file petition in circuit court for settlement of damages for personal injuries to infant; procedure on; form of release; *other modes of settlement permitted.*

1929 *Acts of the Legislature* Chapter 37. (emphasis added).

Additionally, the introduction to the original Act described the statute as:

An Act to provide for the releasing of infants' claims for personal injuries in making binding and conclusive settlements made in accordance with this Act, *but not making such mode exclusive of modes now recognized by law.*

*Id.* (emphasis added).

Furthermore, the plain meaning we find in the statutory language in question is supported by the decision in a case that examined a similar statute and raised similar issues, *Purcell v. Robertson,* 122 W.Va. 287, 8 S.E.2d 881 (1940). In *Purcell,* this Court rejected the argument that *W.Va.Code,* 44–5–7 [1931],[7] which provided for court approval of settlements by trustees, "required the sanction of a court of chancery as a condition precedent." 122 W.Va. at 292, 8 S.E.2d at 883.

---

7. *W.Va.Code,* 44–5–7 [1931] stated:
   It shall be lawful for any guardian, committee or trustee, to compound and compromise any liability due to or from him, provided that such compounding and compromise be ratified and approved by a court of equity of compe-

tent jurisdiction, all parties in interest being before the court by proper process. When such compounding and compromise has been so ratified and approved, it shall be binding on all parties in interest before the court.

That is, in *Purcell* this Court held that a similar statute's authorization of court approval in settlements by trustees did not create a statutory requirement of court approval for all settlements by trustees.

The respondents do not offer a plausible contrary reading of this plain statutory language. Exceptional circumstances are not presented by the instant case which would warrant going beyond the statute's plain language. We conclude that *W.Va.Code*, 44–10–14 [1929] does not require court approval of all claims where a guardian executes a settlement agreement on behalf of a minor who has been injured in his or her person or property.

## IV.

### *Conclusion*

We grant the writ of prohibition as moulded. To the extent that any rulings by the circuit court in the Price or Barker cases are premised upon the assumption that *W.Va. Code*, 44–10–14 [1929] requires court approval of all cases where a parent or guardian obtains payment and executes a release on behalf of or regarding the injuries of an infant who has been injured in his person or property and who is not involved in litigation, such rulings should be reconsidered.[8]

For the foregoing reasons, the writ of prohibition is granted as moulded.

Writ granted as moulded.

---

8. We do not by our decision in this case address or express any opinion regarding the rights, duties, liabilities or remedies of an infant, parent, guardian, tort-feasor, insured or insurer who has entered into or been the subject of an infant settlement which has not been approved by a court. However, three issues raised in the briefs in this case require us to observe that we see the need for further development of the law in West Virginia regarding infant settlements.

The first of these issues is raised by the petitioners' contention that the use of the term "legal guardian" in *W.Va.Code*, 44–10–14 [1929] means that the statute is applicable only where there is a "legal guardian" appointed for an infant; and that the statute does not apply at all to "natural guardians" like parents.

Because resolving this issue is not necessary to decide the narrow issue before us, we decline to do so. However, we are confident that in many if not most of the circuit courts of this state, the summary proceeding procedures set forth in this statute are often used to obtain court approval for a minor's parents to settle and release a minor's claims where there is no suit pending. *Cf. Miller v. Lambert, supra,* 195 W.Va. at 68 n. 11, 464 S.E.2d at 587 n. 11 (1985), where this Court stated: "W.Va.Code, 44–10–14 (1929), provides for court approval of infant settlements even though no suit has been filed."

A second issue is raised by an *amici curiae* brief filed in the instant case by the West Virginia Insurance Federation, the West Virginia Association of Domestic Insurance Companies, and the National Association of Independent Insurers. These *amici* suggest that West Virginia's statutory law on infant settlements may be "unique" among the states "by its preservation of common law settlement"—i.e., by purportedly not requiring under any circumstances some form of court approval or similar safeguard for any infant settlements.

This suggestion—coming from the representatives of an industry that we can assume is involved each year in hundreds of infant settlements in West Virginia and in tens of thousands of infant settlements across the country—raises the prospect that injured children in West Virginia may not be receiving the same kind and degree of legal protection in infant settlements that is afforded to children who are injured in other jurisdictions.

A third issue is raised by the respondents' assertion that there is a significant potential for injustice if parents and other guardians may in a blanket fashion enter into settlements regarding childrens' claims without court approval or similar safeguards. *See, e.g.,* the Barker case release and the deposition transcript excerpt from the Price case at notes 4 and 5, *supra.* The petitioners respond that any such potential for injustice is avoided by theoretically allowing children to at some later date void infant settlements and bring claims against a tort-feasor, a tort-feasor's insurer and/or the infant's own parents or guardian.

The respondents reply that in the real world— given the disappearance and deterioration of evidence and records over time, possible lack of judgment or information or financial imprudence by a parent, and/or the failure of a parent or child to know of their theoretical legal rights— these protections are illusory and contrary to sound public policy.

In light of these issues, we observe that we see the need for further development of the law in this state regarding infant settlements.