IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-1153

_____

FILED

**June 18, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL.
OWNERS INSURANCE COMPANY,
Petitioner

v.

HONORABLE WARREN R. McGRAW, JUDGE OF THE
CIRCUIT COURT OF WYOMING COUNTY, WEST VIRGINIA, and MORLAN
ENTERPRISES, INC., Respondents

_____

PETITION FOR WRIT OF PROHIBITION

WRIT DENIED

_____

Submitted: February 19, 2014
Filed: June 18, 2014

Barbara J. Keefer, Esq.                    Brent K. Kesner, Esq.
Karen E. Klein, Esq.                       Ernest G. Hentschel, Esq.
Schuda & Associates, PLLC                  Kesner & Kesner, PLLC
Charleston, West Virginia                  Charleston, West Virginia
Counsel for the Petitioner                 Counsel for the Respondent

The Opinion of the Court was delivered PER CURIAM.

CHIEF JUSTICE DAVIS, JUSTICE LOUGHRY and JUSTICE WORKMAN concur,
and reserve the right to file concurring opinions.

JUSTICE KETCHUM concurs, in part, and dissents, in part, and reserves the right to file
a separate opinion.

SYLLABUS BY THE COURT

1.      "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial. Court.  It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers.  W. Va. Code 53-1-1."  Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 426 (1977).

2.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors:  (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."  Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

i

Per Curiam:

Petitioner Owners Insurance Company ("Owners") invokes the original jurisdiction of this Court seeking a writ of prohibition to stop the Circuit Court of Wyoming County from exercising jurisdiction over it, from applying West Virginia substantive law instead of Ohio law to an insurance coverage issue, from allowing the respondent, Morlan Enterprises, Inc ("Morlan") to proceed against it on a first-party bad faith claim and for violation of the West Virginia Unfair Trade Practice Act ("UTPA"), W. Va. Code § 33-11-1, et seq., (1974), and from prohibiting the presentation of evidence of the payment of attorney fees sought by Morlan that were paid by another source. Upon a thorough review of the briefs, arguments of counsel, the designated record and applicable precedent, we find that the petitioner has not established the necessary elements for the granting of a writ, and we therefore deny the requested writ of prohibition.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a September 15, 2005, incident where electrician Bobby Messer came into contact with an energized electrical transmission line while working as a lineman for Rectron, Inc., in Mingo County. Mr. Messer alleged that his supervisors tested the line, confirmed that it was de-energized, grounded it and instructed him to remove the transformers and switches from the pole. At the time of the accident,

1

Mr. Messer was working on a line between a substation and a cellphone tower. Mr. Messer's injuries required the amputation of his left arm and right leg.

Mr. Messer filed a civil action against his employer and other entities. Through a series of amended complaints, Mr. Messer added claims against respondent Morlan who had contracted with Rectron, Inc. for services, and against Paul Kerns, an electrician who worked as a subcontractor for Morlan. Mr. Kerns, an Ohio resident, was covered under a commercial general liability policy issued by Owners. This policy was obtained in Ohio through an Ohio agent. Owners likewise operates in the State of Ohio. Mr. Messer and his wife ultimately settled his claims with the various corporate entities, with the exception of Hampden Coal Company, LLC.[1]

The commercial general liability policy issued by Owners was obtained by Mr. Kerns through Gladstone Insurance Agency as part of his work for Morlan. On March 2, 2005, Mr. Kerns' insurance agent faxed to Morlan at its headquarters in Parkersburg a "Certificate of Insurance Coverage" dated March 2005. This certificate of

---

[1] The underlying case in which Mr. Messer sued Hampden Coal Company, LLC, and other entities was appealed to this Court on a juror disqualification issue. The pertinent facts regarding the workplace accident giving rise to the present case are derived from that opinion. The claims against Hampden Coal Company, LLC, were tried, and the jury returned a verdict in favor of company. Mr. Messer appealed that verdict to this Court. The verdict was affirmed by this Court in *Messer v. Hampden Coal Company, LLC*, 229 W. Va. 97, 727 S.E.2d 443 (2012).

insurance identified a policy of insurance in effect from October 9, 2004, through October 9, 2005. Owners was listed as the insurer providing this coverage, and Morlan was named along with Mr. Kerns on the certificate as an additional insured.

After Mr. Messer's lawsuit was filed against Morlan and the other defendants, Morlan's insurer, Westfield Insurance Company ("Westfield"), put Owners on notice of a potential claim against the commercial general liability policy on which Morlan was listed as an additional insured. Owners took no action to defend Morlan until after Morlan filed a third-party complaint against Mr. Kerns, wherein Morlan asserted that any liability it had to Mr. Messer was the result of work performed by Mr. Kerns in April and May of 2005. Owners then engaged counsel to defend Mr. Kerns for the third-party claim. Mr. Messer eventually also asserted a direct claim against Kerns and Owners provided a defense to that claim. In April of 2009, Owners settled Mr. Messer's claim against Morlan and Kerns and obtained a full and final release of liability. The settlement of Mr. Messer's claim did not, however, resolve the coverage dispute between Morlan and Owners.

While these coverage claims were pending in West Virginia, Owners twice filed declaratory actions in Ohio courts, seeking a declaratory judgment of its duties to Morlan. The first of these actions was filed in the Court of Common Pleas in Guernsey

3

County. That case was dismissed; the Ohio judge ruling that the matters at issue belonged in the courts of West Virginia.[2]

The second action was filed in the Court of Common Pleas in Allen County, Ohio, seeking a declaratory judgment of Owners' duties toward Morlan. On November 5, 2009, this case was also dismissed; the court finding that "Ohio has no overriding interest in deciding this case. It does not involve a localized controversy. It is a broad action for contribution based on a settlement paid in West Virginia based on claims originating in West Virginia and involves policies issued and witnesses residing in West Virginia." The Allen County court specifically noted that "many of the same issues could be covered" in the litigation pending in West Virginia.

Owners appealed the Allen County decision to the Ohio Court of Appeals. The Ohio Court of Appeals affirmed the Allen County ruling by an opinion entered April 5, 2010, stating that West Virginia had far superior contacts with the case than Ohio did, because the coverage issues arose from an incident in West Virginia, West Virginia was the state where all of the transactions of direct relevance to Owners' complaint took place

_____

[2]   In its order entered June 15, 2009, the Ohio court stated that the "Plaintiff may pursue adjudication of this matter in the Circuit Court of Wyoming County, West Virginia, in Civil Action No. 08-C-182."

and West Virginia was the site where Owners negotiated the settlement with Mr. Messer and his wife for which it now sought indemnification.

After its Ohio appeals were exhausted, Owners filed an action in the Circuit Court of Wyoming County separate from the one filed by Mr. Messer seeking to recover the amounts it paid to settle the Messer claims against Morlan from Morlan's commercial, Westfield. This civil action was consolidated with the original civil action filed by Mr. Messer in 2006 for the purposes of discovery.

On May 24, 2011, Owners filed a motion to apply Ohio law to this dispute. That motion was later amended to include a motion for summary judgment on that issue. Morlan disputed Owners' motion, arguing that West Virginia law applied to this dispute because the certificate of insurance issued by Owners to Morlan was issued to Morlan's West Virginia address and that the incident giving rise to this dispute happened in West Virginia, making West Virginia law the governing law.

On June 11, 2013, the Circuit Court of Wyoming County denied Owners' Motion to apply Ohio law. Furthermore, in a November 4, 2013, order the court granted Morlan's motion to prohibit any evidence or testimony about the payment of legal fees by Westfield on behalf of attorneys representing Morlan in this action. The circuit court also granted Morlan's motion for summary judgment on the coverage issue, stating that

Owners' commercial general liability policy provided primary coverage for Mr. Messer's claims against Morlan. The order did not address Morlan's claims against Owners for bad faith, breach of contract and violations of the UTPA.

Owners invokes the original jurisdiction of this Court, seeking a writ of prohibition to stop the current proceedings filed by Morlan in the Circuit Court of Wyoming County.

## II.

## STANDARD OF REVIEW

This Court has explained the standard of review applicable to a writ of prohibition, stating that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 426 (1977). In Syllabus pt. 4 of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996), this Court said:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3)

6

whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

# III.

## DISCUSSION

In this proceeding the petitioner seeks to prevent enforcement of the circuit court's order regarding its jurisdiction over Owners, the use of West Virginia substantive law over Ohio substantive law, allowing the first-party bad faith action instituted by Morlan to proceed against Owners and prohibiting Owners from introducing evidence of the payment of Morlan's attorney fees by another source.

The petitioner asserts there are four reasons why this Court should stop the proceedings pending in the Circuit Court of Wyoming County from going forward. Owners first asserts that the circuit court erred in ruling that West Virginia has jurisdiction over it since it is an Ohio-based insurer who issued a policy to an Ohio insured through an Ohio agent for a business located in Ohio that was not licensed to do business in West Virginia. Second, Owners asserts that West Virginia law should not

7

apply to a question of coverage of an Ohio insurance policy issued to an Ohio insured by an Ohio insurer via an Ohio agent. Third, Owners contends that the named insured set forth on the certificate of insurance was never an actual additional insured for which coverage was available. Fourth, Owners argues that the collateral source rule applies to the attorney fees paid by Morlan's own insurer in a coverage dispute regarding the priority of coverages between Westfield and Owners. Morlan counters that the lower court's rulings are correct and interlocutory and that Owners is not entitled to the relief of this Court in the form of a writ of prohibition.

We have held that an extraordinary writ, such as the one sought by Owners, is not to be used as a substitute for an appeal.[3] "Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953). In addition, "[t]his Court is 'restrictive in its use of prohibition as a remedy.' *State ex rel. West Virginia Fire Cas. Co. v. Karl*, 199 W.Va. 678, 683, 487 S.E.2d 336, 341 (1997)." *State ex rel. Allstate Ins. Co. v. Gaughan*, 220

_____

[3] "Under W. Va. Code 58-5-1 (1925) appeals may only be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution of what has been determined." Syl. pt. 3, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995).

W. Va. 113, 118, 640 S.E.2d 176, 182 (2006).  In syllabus point 4 of *State ex rel. Hoover*

*v. Berger*, this Court said:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Applying this standard of review, we find that Owners is not entitled to its

requested writ of prohibition.  Under the first prong of syllabus point 4 of *Hoover*, the

Court must examine whether the party seeking the writ has any other adequate means,

including a direct appeal, to obtain the desired relief.  We find that inasmuch as the order

of the circuit court is not a final order, Owners would have an opportunity to appeal the

decision of the lower court upon entry of a final order.

Applying the second *Hoover* factor regarding whether Owners will be

prejudiced in a way that is not correctable upon appeal, we see no indication that any

9

error in the lower court's interlocutory rulings would not be reparable if this matter were directly appealed to this Court. Under prong two of *Hoover*, Owners is not prejudiced by waiting to appeal a final order.

The third and most significant factor is whether the circuit court's order is clearly erroneous as a matter of law. We have defined "clearly erroneous" as follows:

> A finding is "clearly erroneous" when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirely.

Syl. pt. 1, in part, *In the interest of Tiffany Marie S.* 196 W. Va. 223, 470 S.E.2d 177 (1996). Owners makes a number of arguments regarding the propriety of the lower court's rulings, including that the circuit court's decision was clearly wrong because West Virginia has no jurisdiction over an Ohio insurer, who issued a policy to cover an Ohio resident at the request and behest of an Ohio insurance agent. Owners further argues that Morlan is not a first-party claimant who is entitled to pursue a bad faith/UTPA agreement against Owners. Morlan counters all of these arguments, relying upon the issuance of the certificate of insurance naming it an additional named insured to

10

ti at its West Virginia address.[4]  The issuance of the certificate of insurance naming a West Virginia company as an additional insured is also support for Morlan's argument that West Virginia law, not Ohio law, should apply to this case.  Finally, Morlan contends that the certificate of insurance establishes the basis of it bad faith/UTPA claim against Owners.

The circuit court's rulings were not clearly erroneous within our definition of the phrase.  While there were arguments that supported both Owners' motion and Morlan's response, the circuit court's resolution of these issues does not leave this Court with a definite and firm conviction that the lower court made a mistake, such that this matter cannot proceed to a resolution before the circuit court and then be part of an

---

[4]  Both Owners and Morlan argues that our holding in *Marlin v. Wetzel County Board of Education*, 212 W. Va. 215, 569 S.E.2d 462 (2002), is applicable to the case at bar.  We held in Syllabus point 9 of *Marlin* that

> [a] certificate of insurance is evidence of insurance coverage, and is not a separate and distinct contract for insurance. However, because a certificate of insurance is an insurance company's written representation that a policyholder has certain insurance coverage in effect at the time the certificate is issued, the insurance company may be estopped from later denying the existence of that coverage when the policyholder or the recipient of a certificate has reasonably relied to their detriment upon a misrepresentation in the certificate.

11

appeal by one of the parties. These issues may be further developed in the circuit court and subsequently appealed.

Applying the fourth *Hoover* factor, i.e., whether the circuit court's order is an often-repeated error or that it manifests persistent disregard for established procedure or substantive law, we find that the circuit court's order does not display this type of persistent error or blatant disregard for our jurisprudence and procedure. Furthermore, the circuit court's order does not raise new or important problems or issues of law of first impression. Owners argues that this case presents an opportunity to clarify our holding in *Marlin* and to provide guidance to circuit courts on the issue and legal effect of certificates of insurance. We decline to address those questions in this proceeding prior to an appeal of the final order of the circuit court.

Reviewing the entirety of the record before us, we find that it is premature to issue the requested writ of prohibition based upon the interlocutory order herein. The matters raised by Owners in this petition should be resolved in the lower court. An appeal may then be taken from any final order.

## IV.

## CONCLUSION

For the foregoing reasons, we find and conclude that the petitioner is not entitled to a writ of prohibition.

Writ denied.

13